SCANNED at LSP and Emailed
5-16-23 by _UB_ . _55_ pages
date      initials    No.

**RECEIVED**

MAY 16 2023

Legal Programs Department

A COMPLAINT UNDER THE CIVIL RIGHTS ACT,
42 U.S.C. § 1983

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

_Willie E. BERRY, Jr._
Plaintiff

_354431_ .
Inmate Number

VERSUS

_Cecil HILBURN ; Keenen LETCHER;_
_Liondell MINOR ; Sandra GREEN ;_
_William ROSSO ; James M. LEBLANC._

(Enter above the full name of each
defendant in this action.)

Electronic Filing Pilot Program

In accordance with the Procedural Rules for Electronic Filing Pilot Project, General Order 2012-01, inmates who reside in or are transferred into Louisiana Department of Corrections facilities participating in the Electronic Filing Pilot Program shall receive orders, notices and judgments by Notice of Electronic Filing ("NEF").

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. § 1983.

The names of **all parties** must be listed in the caption and in part III of the complaint **exactly the same**.

In order for this complaint to be filed, it must be accompanied by the filing fee of $402.00. In addition, the United States Marshal will require you to pay the cost of serving the complaint on each of the defendants.

If you are unable to pre-pay the filing fee and service costs, you may petition the court to proceed in forma pauperis. You must sign the affidavit, and obtain the signature of an authorized officer certifying the amount of money in your inmate account. If pauper status is granted, you will be required to pay an initial partial filing fee and thereafter, prison officials shall be ordered to forward monthly payments from your inmate account until the entire filing fee is paid.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS. ALSO, DO NOT INCLUDE EXHIBITS.

Submit the complaint and pauper affidavit to the Clerk of the United States District Court for the Middle District of Louisiana, 777 Florida Street, Suite 139, Baton Rouge, La. 70801-1712.

I.    Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?   Yes (✓) No ( )

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit
    Plaintiff(s): *See Attached 'PREVIOUS LAWSUITS' DETAILS' (Separately Captioned).*

    Defendant(s): *Same as above-stated.*

2. Court (if federal court, name the district; if state court, name the parish):
    *Same as B1.*

3. Docket number: *Same as B1.*

4. Name of judge to whom case was assigned: *Same as B1.*

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?):
    *Same as B1.*

6. Date of filing lawsuit: *Same as B1.*
7. Date of disposition: *Same as B1.*

C. Have you had any previously filed federal lawsuits or appeals, whether or not related to the issues raised in this complaint, dismissed by any federal court as frivolous, malicious, or for failure to state a claim for which relief can be granted?
    Yes (✓)      No ( )

If your answer is yes, list the civil action numbers and the disposition of each case. You must identify in which federal district or appellate court the action was brought.

*Same as B1.*

II.    Place of present confinement: *Louisiana State Penitentiary (LSP); Angola, Louisiana.*

A. Is there a prisoner grievance procedure in this institution?
Yes (✓) No ( )

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
Yes (✓) No ( )

C. If your answer is Yes:

1. Identify the administrative grievance procedure number(s) in which the claims raised in this complaint were addressed. *Disciplinary Appeal No: LSP-2022-0242-W; ARP No: LSP-2023-0019.*

2. What steps did you take? *Thoroughly Exhausted; see also, Attached COMPLAINT, at paragraphs 52, 53 and 56.*

3. What was the result? *Denied Relief; see also, Attached COMPLAINT, at paragraphs 52, 53 and 56.*

D. If your answer is No, explain why not: _*N/A.*_

III.   Parties
(In Item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A. Name of plaintiff(s) *Willie E. BERRY, Jr.*
   Address *Louisiana State Penitentiary (LSP); Angola, Louisiana (LA) 70712.*

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use Item C for the names, positions, and places of employment of any additional defendants.

B. Defendant *Cecil HILBURN* _____ is employed as
*CAPTAIN (?)* _____ at *Louisiana's Depart-
ment of Corrections (La. DOC), Baton Rouge, LA.*

C. Additional Defendants: *Keenen LETCHER, LIEUTENANT, LSP, Angola, LA.;
Bondell MINOR, M/SGT., LSP, Angola, LA.; Sandra GREEN, M/SGt,
LSP, Angola, LA.; William ROSSO, ASST. WARDEN, LSP, Angola, LA.;
James M. LEBLANC, SEC. of La. DOC, Baton Rouge, LA.*

## IV. Statement of Claim

State here as briefly as possible the facts of your case.  Describe how each defendant is involved.  Include also the names of other persons involved, dates, and places.  **Do not given any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

_See, Attached COMPLAINT._

V.    Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite

no cases or statutes. Attach no exhibits._____

____See, Attached COMPLAINT._____

_____


VI.    Plaintiff's Declaration

1. I understand that I am prohibited from bringing a civil action in forma pauperis if, while I was incarcerated or detained in any facility, I have brought three or more civil actions or appeals in a court of the United States that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am in imminent danger of serious physical injury.

2. I understand that even if I am allowed to proceed in forma pauperis, I am responsible for paying the entire filing fee and any costs assessed by the Court, which, after payment of the partial initial filing fee, shall be deducted from my inmate account by my custodian in installment payments as prescribed by law.

3. I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice.

4. I consent to receive orders, notices and judgments by Notice of Electronic Filing.

Signed this _15_ day of ___May_____, 20_23_.

_____Willie Berry._____
Signature of plaintiff(s)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Willie E. BERRY, JR., (#354431),
                    PLAINTIFF

VERSUS

Cecil HILBURN, ET AL.,
                    DEFENDANTS

                              Civil Action Number:

_____

PREVIOUS LAWSUITS' DETAILS

I, the undersigned Plaintiff, do hereby declare, under the potential penalty of perjury, that the following and sufficient details of Plaintiff's previously filed lawsuits are true and correct to the best of Plaintiff's understanding.

I, the undersigned Plaintiff, have previously filed a total of four (4) lawsuits, ALL at this Honorable Court, and the specific details in proper sequence are as such:

Plaintiff's first Lawsuit had been filed on 17 May 2017.[1] After a trial had been conducted, on the merits of that case, that case had been dismissed (on 03 June 2022) by this District Court: due to a jury reaching a verdict in favor of the defendant. _Currently_, however, that case is pending on an appeal at the Fifth U.S. Circuit Court of Appeals.[2]

Plaintiff's second Lawsuit had been _originally_

[1] _Berry, Jr. V Sanders_; USM, 3:17-cv-00318-BAJ-EWD.
[2] _Berry, Jr. V ~~Sanders~~ Sanders_; 5 US Cir. CA, No. 22-30698.

filed on 02 April 2020.[3] That case had been dismissed on the grounds of 'failure to state a claim for which relief can be granted' (on 14 July 2021) by this District Court. (Plaintiff allowed that case to end at that judgment-of-dismissal.)

Plaintiff's third Lawsuit had been filed on 10 September 2020.[4] Currently, that case is "actively" pending and set for trial (on 25-27 July 2023) at this District Court.

Plaintiff's fourth Lawsuit had been filed on 11 January 2021.[5] Currently, that case is "ac-

---

[3] Berry, Jr. V Smith, et al.; USM, 3: 21-cv-00020-SDD-RLB.

[4] Berry, Jr. V Williams, et al.; USM, 3: 20-cv-00599-SDD-RLB.

[5] Berry, Jr. V Orr, et al.; USM, 3: 21-cv-00027-JWD-RLB.

tively" pending and scheduled for pretrial pro-
ceedings at this District Court.

Plaintiff has NEVER filed any other law-
suit/court-case (in State OR federal court) other
than the (4)-lawsuits/matters as mentioned above
AND the instant filing.

Executed at Angola, Louisiana, on <u>15 May</u>,
2023.

<u>s/ Willie Berry.</u>
PLAINTIFF

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

Willie E. BERRY, Jr., #354431,
              PLAINTIFF

VERSUS                                  COMPLAINT

Cecil HILBURN, ET AL.,
              DEFENDANTS

                              Civil Action Number:
                              _____

## I. INTRODUCTION

1. This is a civil rights action filed by Plaintiff, WILLIE E. BERRY, JR., a state prisoner, seeking reliefs and monetary judgments under Title 42 U.S.C. section 1983, alleging the use of excessive and/or unnecessary force and conspiracy to

commit the use of excessive/unnecessary force claims/incidents in violation of the Eight Amendment to the United States Constitution.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Honorable Court is invoked pursuant to Title 28 U.S.C. sections 1331 and 1343 (a)(3). Plaintiff seeks declaratory relief, by the authorized jurisdiction of this Honorable Court, pursuant to Title 28 U.S.C. sections 2201 and 2202. Plaintiff's claims for injunctive relief are authorized within the jurisdiction of this Honorable Court pursuant to Rule 65, Federal Rules of Civil Procedure.

3. The United States District Court for the Middle District of Louisiana, is an appropriate venue under Title 28 U.S.C. section 1391 (b)(2),

because said court has national judicial jurisdiction where the events giving rise to the instant claims occurred.

## III. PARTIES

4. Plaintiff, WILLIE E. BERRY, JR., is and was at all times mentioned within the instant complaint confined in the TU area of the Louisiana State Penitentiary (LSP) at Angola, Louisiana.

5. Defendant, Cecil HILBURN, is and was at all times mentioned within the instant complaint a corrections officer employed by Louisiana's Department of Corrections (La. DOC) and LSP who held the rank of CAPTAIN (as related to the actual/instant use of excessive and/or unnecessary force allegations raised against him) and who had been assigned to (and worked at) LSP's

TU area at Angola, Louisiana (LA).

6. Defendant, Keenen LETCHER, is and was at all times mentioned within the instant complaint a Corrections officer employed by La. DOC and LSP who held the rank of LIEUTENANT (as related to the actual/instant "conspiracy" to commit the use of excessive and/or unnecessary force allegations raised against him) who had been assigned to (and worked at) LSP's TU area at Angola, LA.

7. Defendant, Loondell MINOR, is and was at all times mentioned within the instant complaint a corrections officer employed by La. DOC and LSP who held the position of MASTER SERGE-ANT (as related to the actual/instant "conspiracy" to commit the use of excessive and/or unnecessary force allegations raised against

him) who had been assigned to (and worked at) LSP's TU area at Angola, LA.

8. Defendant, Sandra GREEN, is and was at all times mentioned within the instant complaint a corrections officer employed by La. DOC <u>and</u> LSP who held the position of MASTER SERGEANT (as related to the actual/instant "conspiracy" to commit the use of excessive and/or unnecessary force allegations raised against her) who had been assigned to (and worked at) LSP's TU area at Angola, LA.

9. Defendant, William ROSSO, is and was at all times mentioned within the instant complaint a corrections officer employed by La. DOC <u>and</u> LSP who held the rank of ASSISTANT WARDEN (as related to the instant/relevant complaints) who had

been assigned to LSP's TU area at Angola, LA.

10. Defendant, James M. LEBLANC, is and was at all times mentioned within the instant complaint a La. DOC employee who held/holds the title of SECRETARY of the La. DOC (as related to the instant/relevant complaints) who is the "ultimate executor" of LSP from the Headquarters at Baton Rouge, LA.

11. Defendants HILBURN, LETCHER, MINOR and GREEN are each being sued in both capacities: "Individual" for monetary judgments, AND "official" for any applicable declaratory/injunctive reliefs.

Defendants ROSSO and LEBLANC are each being sued in ONLY their "official capacity" for any applicable declaratory/injunctive reliefs.

At all times mentioned within the instant

complaint ALL Defendants acted under the color of State law.

## IV. FACTS

12. On 02 December 2022, at approximately (appro) 0530hrs., LSP's Master Sergeant Sandra GREEN ("Officer Green") arrived on the tier, where Plaintiff had been housed, spewing not-clearly-audible/un-intelligible statements directed towards Plaintiff. (Officer Green had been accompanied by a night-Shift officer, whom she had been relieving.)

13. On both officers' way back up the tier, Plaintiff requested for Officer Green to clearly re-peat the statements she had been attempting to make/directing towards Plaintiff when she ini-tially arrived on the tier.

14. Officer Green then stated 'Motherfuxxer you

heard what I said; if your b\*tc#—a\*x pull your f—king d—k out on me today, I'm gonna' activate that (security) beeper and get those people to "gas" (spray) your a—— & dixk down!" (Paraphrased.)

15. Out of anger (and due to unsolicited provocation) Plaintiff began to swear (and exhibit obscene gestures) towards Officer Green.

16. Officer Green then asked the night-shift officer for (and obtained) the security-beeper.

17. Officer Green then stood there, in front of Plaintiff's housing-cell, for apprx. two-and-a-half (2½) minutes activating the security-beeper; whereas, NO security assistance immediately arrived (as required). Officer Green eventually/then exited the tier.

18. Shortly thereafter, LSP Master Sergeant Lo-ondell **MINOR** ("Officer Minor") arrived on the tier, in an angry manner, stopping at Plaintiff's housing-cell; [Officer Minor] then threw a food-tray on the floor; and then [he] began giving multiple "inappropriate, and disrespectful" commands to Plaintiff.

19. Plaintiff "justly" defied/disobeyed the disrespectful commands (given by Officer Minor).

20. Officer Minor then stated to Plaintiff ——— something to the effect of ——— "I want you to keep that same energy; because, after 'the pill-call lady' pass out the medications, WE are going to burn your dixk off of your body!" (Partially paraphrased.)

21. Heeding to the clear threats (made by Offi-

cer Minor), [Plaintiff] began to prepare for a "possible" excessive force act to be committed against [him]. ( Plaintiff kept peeping through a crack of the cell's door, and eventually gave some legal-documents to an inmate-orderly: In expecting an unlawful act to be attempted by LSP's security personnel.)

22. Through the crack of the cell's door-view, Plaintiff witnessed LSP security personnel in the lobby-area / inside the security-booth appearing to be planning "something": In which would later prove to be the act of conspiring to execute the use of excessive force on plaintiff.

23. Plaintiff then witnessed the referenced security personnel (LSP's CAPTAIN Cecil HILBURN ("Officer Hilburn"), LIEUTENANT Keenen LETCHER

("Officer Letcher") and Officer Minor) began to make rounds on each tier, _except_ the tier Plaintiff had been housed on.

24. Eventually 'the pill-call lady' arrived on the tier (where Plaintiff had been housed); and, while 'she' had been down the tier, Officer Minor arrived on the tier to turn off the fan at the head of the tier: In which delivered a "strong in-dication" that the discharging of a can of chemi-cal agent is imminent.

25. After appro. an hour from the original inci-dent (involving Plaintiff and Officer Green), Officers Holburn, Letcher and Minor arrived at Plaintiff's housing-cell.

26. [Officer Holburn] —————— being the most senior officer on the scene —————— had a body-camera,

attached to the front of [his] waist area, alot with a "bright circling red-glow"; apparently indicating that the camera is fully (with audio/video) activated. Officer Hilburn also had a large can of chemical agent (pepper-spray)"[1] in one hand.

27. Officer Hilburn then gave Plaintiff an order to strip (disrobe): for the conducting of a strip-search process. (Also, Officer Letcher then told [Plaintiff] that '[he] gotta' stop messin' with them women!")

---

(1) Based upon Information and belief, a "large can" (of chemical agent) is NOT to be used on a single prisoner housed indoors (in a single-man cell) and/or under the circumstances of an "initial engagement" use of force incident. But it (a "large can") CAN be used under more "dire circumstances" including but not limited to: in indoor-settings on "multiple" hostile/unruly prisoners; "escalatory circumstances" (i.e., force-in-continuum on one or more prisoners); and, in ALL outdoor-settings.

28. [Plaintiff] "immediately" began complying with the strip-search process/order, in removing [his] upper garments first: head-gear, sweatshirt, etc.

29. After Plaintiff had become nude from the waist-up, [Officer Holburn] then swiped [his] hand at/over the body-camera; whereas, then the once — "bright circling red-glow" (of the body-camera) went dim/out: presumably, deactivating the body-camera's audio and/or video.

30. Plaintiff then "abruptly" discontinued the strip-search process and demanded that Officer Holburn reactivate the body-camera: because Officer Minor had already made clear threats, to Plaintiff, on which strongly indicated that excessive force would be used on Plaintiff's lower-front private-part

area, in which had become a common (yet un-lawful) practice. Plaintiff was also mindful of the threat —— along the same lines —— made by officer Green.②

31. officer Holburn continued to demand [Plaintiff] remove [his] pants, while officer Letcher "claimed" that the body-camera was in fact on. Then, a few seconds later, officer Holburn "unjustly" discharged a lengthy burst of chemical agent covering Plain-tiff's entire facial and torso area (while Plaintiff had been nude from the waist up). Plaintiff had been apprx. one-and-a-half (1½) feet a-way, from the actual can of chemical agent, at the time officer Holburn discharged said agent.

② See, paragraph 14. (of the instant Complaint).

32. Each of the three officers, whom were at Plaintiff's housing-cell during the "unjust" using of force, then dispersed and exited the tier.

33. Plaintiff then began to experience multiple and overwhelming forms of agony.

34. Minutes later, Officer Minor returned at Plaintiff's housing-cell, with a gas-mask on, attempting to restrain Plaintiff (at Plaintiff's rear area), on which is an "unlawful" tactic designed to restrict the prisoner's ability to reduce the pain with water from the faucet (all while the officer would "pretend" to not being able to get the cell door opened): all for the purpose of causing prolong agony.

35. BUT due to Plaintiff being familiar with such an unlawful tactic, Plaintiff advised officer Mi-

nor to summon officer Hilburn to arrive with the body-camera "fully activated," and Plaintiff will then comply. Officer Minor then exited the tier.

36. Officers Hilburn and Minor then returned at Plaintiff's housing-cell, each with gas-mask on, giving Plaintiff an order to comply with a strip-search process; whereas officer Hilburn had the body-camera presumably fully activated: because the "bright circling red-glow" (on the body-camera) had been alot once again.

37. Plaintiff then "immediately" began complying with the strip-search process/order.

38. Officers Hilburn and Minor then restrained and began escorting Plaintiff to the shower area; whereas, during the escort, [Plaintiff] briefly lost

[has] balance, nearly falling at the shower area, telling officer Hilburn that [he] was experiencing chest-pain.

39. Plaintiff also requested for Officer Hilburn to obtain some soap: for [Plaintiff] to *properly* decontaminate [himself].

40. Officer Hilburn did NOT oblige that request, in which resulted in Plaintiff having to obtain some soap, *thrown to Plaintiff*, from fellow-prisoners housed in the least two cells at the rear of the tier.

41. After [Plaintiff] spent apprx. an hour taking a shower (decontaminating [himself]), an LSP EMT came to medically assess Plaintiff at the shower area. Plaintiff revealed, to that EMT, the excessive force act and all of the continuing pain Plaintiff was

experiencing; but the EMT simply responded dismissively in stating "Well, you know all that comes with the territory."

42. During that time, Officers Hilburn, Letcher and Minor were removing ALL of Plaintiff's property (Including entitled-to-have legal materials and stationery items), from Plaintiff's housing-cell, in an apparent effort to hinder Plaintiff's filing on the unlawful act(s) those officers were responsible for committing.

43. With the body-camera presumably fully activated once again —— due to "bright red-glow" —— Officers Hilburn, Letcher and Minor then restrained and escorted [Plaintiff] back to [his] housing-cell. (But once Plaintiff had been secured inside the cell, and during the removal-of-the-restraints process, Offi-

cer Minor began pulling Plaintiff's wrists through the cell's tray-hatch : as an attempt to inflict further pain.)

44. Eventually Plaintiff got a fellow-prisoner to bring the tier's mobile-telephone to [Plaintiff's] housing-cell : so as to notify [his] loved ones/family about the described unlawful acts that had been committed against [him].

45. While [Plaintiff] had been talking (on the telephone) to [his] loved one for apprx. (3)—(4) mins., officer Minor "immediately" arrived on the tier to unplug the tier's mobile-telephone and removed it off of the tier: in another effort to stymie Plaintiff's attempt to report the described unlawful acts that had been committed. (Officer Minor did NOT return the tier's mobile-telephone until

appro.
(8)-hours later, or ~1730 hours that same day.)

46. Throughout the remainder of that day-shift, Plaintiff got two (2) fellow-prisoners to make calls, via the tier's stationary-telephone: in communicating with [Plaintiff's family] to notify [them] about the incident in question.

47. Later that day, LSP Assistant Warden William ROSSO ("Warden Rosso") made rounds on the tier where Plaintiff had been housed; whereas, Plaintiff then explained to Warden Rosso what all occurred.

48. Plaintiff implored for [Warden Rosso] to review all "relevant" video footage ————— in which [he] could have easily accessed had [he] preferred ————— and Plaintiff vowed, to Warden Rosso, that Plaintiff intended to file an ARP and a subsequent law-suit, based upon the described unlawful acts that

had been committed. (Warden Rosso would eventually dismiss Plaintiff's matter in its entirety.)

49. Officers Hilburn, Minor and Green each eventually submitted "falsified" disciplinary reports; and, Officers Hilburn, Letcher, Minor and Green each further submitted "falsified" ARP responses.

50. During the related disciplinary-hearings and appeals Plaintiff vigorously pleaded for any/all "relevant" video footage to be reviewed and/or preserved. (Those pleas resulted in "insufficient" avail.)

51. Throughout the following days and weeks, Plaintiff (and/or Plaintiff's family) reached out to MA-NY agencies for <u>urgent</u> help on the instant complained-of matter. All to no "obvious" avail.

52. After Plaintiff filed an ARP, on the instant matter, Warden Rosso signed off on the first-step response rejecting Plaintiff's instant claims.

53. At the second-step (of the ARP proceed), La. DOC Secretary James M. LEBLANC ("Secretary Leblanc") had an opportunity to review any/all "relevant" video footage (in the interest of rectifying the instant matter); instead, the ARP had been rejected at that stage, as well, by the obvious authority of Secretary Leblanc.

54. Based upon information and belief, however, all "relevant" video footage had been obtained/preserved by an "external entity."

55. In late-April of 2023, Plaintiff and officer Minor had become embroiled (in a "heated argument"). During that argument, Plaintiff made

references about [Officer Green] eventually "flip- ping/ratting" on defendants/officers Hilburn, Let- cher and Minor. Officer Minor then retorted on stating 'We already got [her] covered; [she] start- ed out on the team (falsifying [her] disciplina- ry-report and all); but once we noticed [her] becoming shaky, we decided to make [her] ARP statement <u>totally</u> contrary to [her] disciplinary- report: so if [she] does attempt to "rat" on us, we'll just point to that contradiction as evidence of [her] not being credible.' Officer Minor also stated, to Plaintiff, that 'some big personnel, at La. DOC Headquarters, told [Officer Hilburn] NOT to worry about the video footage; [he] should just stick to [his] original story; and, that is why we (officers Hilburn, Letcher, Minor & Green) have NOT

been charged with a crime or lost jobs <u>due to that incident.</u>' (Partially Paraphrased.)

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

56. [Plaintiff] asserts that [he] has exhausted all available administrative remedies (in terms of ARP and Disciplinary Appeal) as it wholly relates to the instant suit.

## VI. CLAIMS FOR RELIEF

57. Plaintiff reallege and incorporate by reference paragraphs 1-56.

58. The totality of the actions by each of the defendants HILBURN, LETCHER, MINOR and GREEN, in conspiring to "unnecessarily" use force, and the actual execution of "unnecessarily" using force, against Plaintiff, were done malicious-

ly and sadistically and constituted cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution.

59. The failure of the Defendants ROSSO and LEBLANC to implement and/or enforce policies that could mandate the reviewing/preserving of any "available and relevant" video footage, as it relates to use of force incidents, by which, in such policies absence, as greatly (and constantly) enabling "roguish" LSP/La. DOC corrections officers to perpetuate the use of excessive/unnecessary force against LSP/La. DOC prisoners, in which is a violation of the Eight Amendment to the United States Constitution.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests

for this Honorable Court to enter judgment granting the following:

60. Declare that the acts and/or omissions, exhibited by Defendants HILBURN, LETCHER, MINOR and GREEN, described herein, violated Plaintiffs rights under the Constitution and laws of the United States;

61. Issue a permanent injunction ordering the Defendants ROSSO and LEBLANC: To create, implement and enforce a mandate that would permit (as of right) the reviewing and/or preserving of any "available and relevant" video footage whenever "any LSP/La. DOC prisoner" alleges that the use of excessive/unnecessary force had been executed on that prisoner (and whenever that prisoner "timely makes" a "recorded request" in exercising such right),

and such footage should be preserved throughout any potential disciplinary-hearings/appeals, ARP and judicial-litigation processes; and, for said defendants (Warden Rosso <u>and</u> Secretary Leblanc): To create, implement and enforce "other procedures" that can "greatly" deter/eliminate "roguish" LSP/La. DOC corrections officers from ceasing opportunities to execute the use of excessive/unnecessary force on LSP/La. DOC prisoners within a controlled environment (LSP/La. DOC—prisons, <u>etc.</u>);

62. Award punitive damages (in a dollar-amount) for Plaintiff, against <u>each</u> of the Defendants HILBURN, LETCHER, MINOR and GREEN;

63. Plaintiff's costs of the entire suit equally and totally against Defendants HILBURN, LETCHER, MI-

NOR and GREEN;

64. A jury trial on all issues triable by jury;

65. Any additional judgments, as it relates to the in-stant suit, this Honorable Court may deem just and proper.

Submitted this 15th day of ___May___, 2023 at Angola, La.

s/ Willie Berry

Willie E. Berry, Jr. #354132 (Pro Se)
Louisiana State Penitentiary (LSP)
Angola, La. 70712

# VIII. VERIFICATION

66. I, the undersigned Plaintiff, have read the entire foregoing/instant Complaint and hereby verify that the matters alleged therein are true, except as to any matter alleged on information and belief, and, as to such, I believe to be true. I further certify/verify under the incentivized penalty of perjury that the entire foregoing is true and correct.

Executed at Angola, Louisiana, on <u>15 May</u> 2023.

<u>s/ Willie Berry.</u>