UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILLIE E. BERRY, JR. (#354431)**      **CIVIL ACTION**

**VERSUS**      **NO. 23-380-JWD-RLB**

**CECIL HILBURN, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on October 17, 2023.

                                           **RICHARD L. BOURGEOIS, JR.**
                                           **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**WILLIE E. BERRY, JR. (#354431)**            CIVIL ACTION

**VERSUS**                                    NO. 23-380-JWD-RLB

**CECIL HILBURN, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against defendants Cecil Hilburn, Keenen Letcher, Liondell Minor, Sandra Green, William Rosso, and James LeBlanc, complaining that his constitutional rights were violated due to a conspiracy to use excessive force, the use of excessive force, and the handling of the resulting disciplinary and grievance proceedings. He seeks monetary, declaratory, and injunctive relief.

### 28 U.S.C. §§ 1915(e) and 1915A

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is proceeding *in forma pauperis* or is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995). A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the

violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made any time, before or after service or process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) and *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

## Plaintiff's Allegations

In his Complaint Plaintiff alleges the following: On December 2, 2022, the plaintiff was housed in the TU. Defendant Green arrived on the tier and made statements to the plaintiff that were not clearly audible or intelligible for him. The plaintiff requested for defendant Green to clearly repeat her statements as she walked up the tier. Defendant Green responded, "Mother f*cker you heard what I said. If your b*tch *ss pull your f*cking d*ck out on me today, I'm gonna activate that beeper and get those people to gas your *ss and d*ck down." In response to defendant Green's verbal threat, the plaintiff began to swear and make unspecified obscene gestures towards defendant Green. Defendant Green then activated the security beeper; however, assistance did not immediately arrive, and defendant Green left the tier.

A short time later, defendant Minor arrived on the tier, stopped at the plaintiff's cell, threw a food tray on the ground, and began giving multiple commands which the plaintiff

deemed to be inappropriate and disrespectful. Plaintiff "justly" defied/disobeyed these commands. Defendant Minor then told the plaintiff "… after the pill call lady pass out the medications, we are going to burn you d*ck off your body." The plaintiff then saw defendants Hilburn, Letcher, and Minor appearing to be planning something. These same defendants then began to make rounds on each tier, except for the tier on which the plaintiff was housed.

The "pill call lady" arrived on tier and after she had been down the tier, defendant Minor turned off the fan at the head of the tier. Approximately an hour had passed since the initial interaction with defendant Green when defendants Hilburn, Letcher, and Minor arrived at the plaintiff's cell. Defendant Hilburn, who was carrying a large canister of mace, ordered the plaintiff to disrobe for a strip search, and defendant Letcher stated, "he gotta stop messin' with them women!" The plaintiff removed his upper garments, but abruptly discontinued disrobing because he believed defendant Hilburn had deactivated his body camera. The plaintiff then demanded that defendant Hilburn reactivate his body camera because the plaintiff believed, based on the threats made by defendant Minor, that excessive force was going to be used on the lower half of his body. The plaintiff was also mindful of the threat from defendant Green.

Defendant Hilburn ordered the plaintiff to remove his pants and defendant Letcher claimed that the body camera was activated. A lengthy burst of chemical agent was then administered by defendant Hilburn onto the plaintiff's face and torso. Defendants Hilburn, Letcher, and Minor then exited the tier. Defendant Minor returned minutes later wearing a gas mask. He attempted to restrain the plaintiff, but the plaintiff refused to comply, demanding that defendant Hilburn return with a fully activated body camera. Officer Minor exited the tier and returned with defendant Hilburn who was now also wearing a gas mask. The plaintiff was ordered to comply with the strip search. Since he believed defendant Hilburn's body camera was

activated, the plaintiff complied with the strip search.

The plaintiff was then restrained and escorted to the shower area. He informed defendant Hilburn that he was experiencing chest pain. The plaintiff requested soap from defendant Hilburn but ultimately had to obtain soap from another inmate before taking an hour long shower. The plaintiff was assessed by an EMT and informed the EMT that he was experiencing pain.

While the plaintiff was showering and being assessed, defendants Hilburn, Letcher, and Minor removed the plaintiff's property in "an apparent effort to hinder plaintiff's filing on the unlawful acts" of the defendants. The plaintiff was again restrained and escorted back to his housing cell. While removing the plaintiff's restraints, defendant Minor began to pull the plaintiff's wrists through the tray hatch to inflict further pain. While plaintiff was talking to his family about the incident on the tier's mobile telephone, defendant Minor unplugged the phone and removed it from the tier. The phone was not returned until eight hours later.

Later that day, the plaintiff spoke to defendant Rosso and requested that he review the relevant video footage and notified defendant Rosso that he intended to file a grievance and subsequent lawsuit. Defendants Hilburn, Minor and Green submitted falsified disciplinary reports and grievance responses. During his disciplinary hearing, the plaintiff requested that all relevant video footage be reviewed and preserved. The plaintiff's grievance was rejected at the First Step by defendant Rosso, and at the Second Step by defendant LeBlanc. The relevant video footage was obtained and preserved by an external entity.

In April of 2023, the plaintiff and defendant Minor had a heated argument, and the plaintiff told defendant Minor that defendant Green would eventually flip on defendants Minor, Hilburn and Letcher. Defendant Minor retorted that they already had that covered by making defendant Green's disciplinary report contrary to her grievance statements so that she would not

seem credible. Defendant Minor also told the plaintiff that headquarters told defendant Hilburn not to worry about the video footage, and to just stick to his original story.

**Excessive Force**

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding this, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

According to the plaintiff's allegations, defendant Green made statements towards him which he could not hear. Instead of disregarding these statements, he requested that they be repeated. In response to the statements repeated by defendant Green, the plaintiff caused a disturbance by swearing and making obscene gestures towards defendant Green. Defendant Green activated the security beeper and exited the tier when assistance didn't arrive immediately. When defendant Minor arrived on the tier, plaintiff deemed his commands to be inappropriate and disrespectful and chose to not to comply. Defendant Minor warned, in a threatening manner, that if the plaintiff continued his behavior a chemical agent would be used.

Once the pill call was complete on the tier, defendants Hilburn, Letcher, and Minor attempted to strip search the plaintiff. However, he ceased complying with the search when he assumed that defendant Hilburn's body camera was no longer activated. Plaintiff demanded that the camera be turned back on. Despite defendant Letcher informing the plaintiff that the body camera was activated, the plaintiff continued to disregard defendant Hilburn's order to complete the strip search. At this point, the plaintiff was sprayed with a chemical agent by defendant Hilburn. Defendants then left the tier.

After being sprayed, the plaintiff refused defendant Minor's attempts to restrain him. Plaintiff then told defendant Minor that he would not comply until officer Hilburn returned with an activated body camera. Once defendant Hilburn returned, the plaintiff complied with the strip search, was restrained, and escorted to the shower area where he was allowed to decontaminate and be examined by an EMT.

It is clear from the plaintiff's allegations that he believes he may pick and choose which prison orders to obey, and to demand prison official comply with certain rules based on his perception of events. However, inmates do not have a constitutional right to pick and choose

which prison orders to obey. Moreover, inmates do not have the constitutional right to order prison officials to obey their own rules. *See Myer v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). *See also Buentello v. Rayford*, 2018 WL 3625858, at *6 (E.D. Tex. Mar. 14, 2018) (finding the same and recommending dismissal of retaliation claim where plaintiff refused to submit to a strip search due to the presence of a female guard, and then would still not submit because he desired to wash his hands prior to the search).

Allowing inmates to pick and choose which orders to obey would result in chaos and disorder. The constitution does not require prison officials to allow inmates to disobey orders based on speculation that a rather routine order, like the ones given in the instant matter, will ultimately result in a danger to him. *Mauzey v. Kane*, 2006 WL 778653, at *3 (N.D. Cal. Mar. 27, 2006).

According to his own allegations, the chemical agent was administered to compel his compliance, and the brief use of chemical agents to maintain or restore discipline or to compel compliance with an order has been upheld many times. *See Amos v. Jefferson*, 861 F. App'x. 596, 603 and n.35 (5th Cir. 2021). Plaintiff's mistaken belief that he was justified in failing to comply with the defendants' orders does not transform the defendants' actions into a constitutional violation.

With regards to the removal of his restraints by defendant Minor, plaintiff's allegation that his wrists were pulled through the tray hatch to inflict pain is speculative. The plaintiff offers no additional facts that would indicate defendant Minor intended to inflict pain upon the plaintiff when removing his restraints. Even if it was the intent of defendant Minor to inflict pain while removing the plaintiff's restraints, not every malicious or malevolent action by a prison guard gives rise to a federal cause of action. *De minimis* uses of physical force are excluded from

constitutional recognition. As such, the plaintiff has failed to state a claim for the use of excessive force.

## Verbal Abuse/Threats

To the extent the plaintiff complains of verbal abuse and/or threats made by any defendant, neither threats nor verbal abuse by a security officer is actionable under § 1983. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) ("[C]Iaims of verbal abuse are not actionable under § 1983"); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983"); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983").

## Grievance and Disciplinary Proceedings

With regards to the plaintiff's complaints about his disciplinary and grievance proceedings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings (including informal complaints) properly investigated, handled, or favorably resolved, *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id.* at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings.

*See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation"); and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of Plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights. *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that, in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force. Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). It is only those restrictions that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical

and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484. In the instant case, Plaintiff was sentenced to extended lockdown. This punishment does not amount to disciplinary action that infringes upon a constitutionally-protected liberty interest that would invoke the protection of the Due Process Clause of the Fourteenth Amendment.[1] According, the plaintiff has failed to state a claim upon which relief may be granted with regards to his disciplinary and grievance proceedings.

## Denial of Access to the Courts

With regards to the plaintiff's allegations concerning the removal of his property and the mobile telephone from his housing tier, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). The plaintiff alleges that he exhausted both a disciplinary appeal and a grievance and has timely filed the instant Complaint. The plaintiff has not alleged, and it does not appear, that the plaintiff has suffered prejudice or detriment as a result of the complained of actions. As such, the plaintiff has failed to state a claim for denial of access to the courts.

## Failure to Follow Prison Rules or Regulations

With regards to the plaintiff's allegations concerning the activation/deactivation of body cameras, and the review and/or preservation of video footage, the failure of prison officials to

---

[1] Examples of prison hardships that would qualify as atypical and significant include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital, and extension of the prisoner's sentence for his underlying criminal conviction. *Sandin*, 515 U.S. at 484; *see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (addressing solitary confinement in a "Supermax" facility imposed an atypical and significant hardship to a protected liberty interest based on the existence of extenuating circumstances, including disqualification of an otherwise eligible inmate from parole consideration).

follow prison rules or regulations does not amount to a violation of Plaintiff's constitutional rights. *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989). As such, the plaintiff has failed to state a claim in this regard.

### Conspiracy

"To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). The plaintiff's allegation that the defendants engaged in a conspiracy are entirely speculative. Moreover, the plaintiff does not allege facts that amount to a constitutional violation. As discussed above, the plaintiff has failed to state a claim upon which relief may be granted. Defendants cannot be liable for a conspiracy that failed to violate the plaintiff's rights. *See Jackson v. City of Hearne, Texas*, 959 F.3d 194, 206 n.16 (5th Cir. 2020), citing *Mowbray v. Cameron Cty.*, 274 F.3d 269, 280 (5th Cir. 2001) (holding that there cannot be a conspiracy claim where qualified immunity protects the alleged civil rights violators); *Hale*, 45 F.3d at 920 ("[A] conspiracy claim is not actionable without an actual violation of [§] 1983"). Accordingly, the plaintiff's Complaint fails to state a claim for conspiracy.

### Supplemental Jurisdiction

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over

which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

### RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that this action be dismissed, with prejudice, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[2] It is further recommended that the plaintiff's Motion to Appoint Counsel (R. Doc. 3) be denied as moot.

Signed in Baton Rouge, Louisiana, on October 17, 2023.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] The plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."